IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 25, 2001 Session

## STATE OF TENNESSEE v. ALKITA M. ODOM

**Appeal from the Criminal Court for Sumner County**
**No. 308-2000**
**Jane Wheatcraft, Judge**

_____

**No. M2000-02676-CCA-R9-CD - Filed May 31, 2001**

_____

This is an interlocutory appeal by the State pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The Defendant, Alkita M. Odom, was indicted for the offenses of forgery and criminal simulation, each in the amount of $250,000. The indictment reflected that each offense was a Class B felony. Upon the Defendant's motion, the trial court dismissed the indictment to the extent that it reflected Class B felonies because the court found that for the crime to be anything other than Class E felonies, the Defendant would have had to have actually obtained goods or services. The court then granted the State's motion to amend the indictment to reflect Class E felonies for the purposes of appeal. The State argues on appeal that the trial court improperly dismissed the indictment based on the grade of the offense charged. We agree. Accordingly, we reverse the dismissal of the indictment and reinstate it as originally returned by the Grand Jury.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

David A. Doyle, District Public Defender, Gallatin, Tennessee, for the appellee, Alkita Odom.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and J. Craig Myrick, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

In a four-count indictment, the Sumner County Grand Jury charged the Defendant with one count of forgery and three counts of criminal simulation. Only the count of forgery and one count of criminal simulation are at issue in this case. The count of forgery alleged that the Defendant

did unlawfully and with intent to defraud another of the sum of $250,000.00, utter and publish to Sun Trust Bank a certain forged writing, to wit: a check number 4606,

dated February 28, 2000, in the amount of $250,000.00, made payable to [the Defendant], purportedly signed by another, for the payment of money drawn upon the Sun Trust Bank, and [the Defendant] well knew at the time of the uttering of the aforesaid writing that the purported signature on said check as drawer thereon was not authorized by the owner, against the peace and dignity of the State of Tennessee.

The count of criminal simulation at issue then alleged that the Defendant

did, with intent to defraud another, unlawfully, knowingly and feloniously possess a check which had been made so that it appeared to have a value of $250,000.00, which it in fact did not have, with intent to pass or otherwise utter it, against the peace and dignity of the State of Tennessee.

The indictment indicated that both of these offenses were Class B felonies.

The Defendant filed a motion for a bill of particulars, which motion was granted by the trial court, asking the State to reveal the nature and value of property or services allegedly obtained by the Defendant for each count of the indictment. The State responded that the Defendant obtained no goods or services in any of the counts. The Defendant then filed a motion to dismiss the two counts charging Class B felonies or, in the alternative, to amend those counts to reflect Class E felonies. Both forgery and criminal simulation provide that the offense is "punishable as theft pursuant to § 39-14-105, but in no event shall [the offense] be less than a Class E felony." See Tenn. Code Ann. §§ 39-14-114(c), -115(c). The theft statute then grades theft from a Class A misdemeanor to a Class B felony depending on "the value of the property or services obtained." Id. § 39-14-105. The Defendant asserted that because forgery and criminal simulation are both "punishable as theft," the Defendant could never be guilty of anything more than a Class E felony because she received no property or services. The State countered with the argument that whether a defendant actually obtains property or services is irrelevant because the crimes of forgery and criminal simulation do not require the actual receipt of property or services. The trial court agreed with the Defendant and granted the Defendant's motion, which ultimately resulted in the current appeal.

The issue before this Court is essentially one of statutory construction. "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). This Court is to determine legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000). Moreover, the legislature has provided that criminal statutes are to "be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104; see also State v. Owens, 20 S.W.3d 634, 640 (Tenn. 2000). The Court "will not apply a particular interpretation to a statute if that interpretation would yield an absurd result." Flemming, 19 S.W.3d at 197.

The natural and ordinary meaning of the language in both the forgery and criminal simulation statutes clearly indicates that the crimes of forgery and criminal simulation are complete whether or not the defendant receives any property or services. A person commits the offense of forgery when that person "forges a writing with intent to defraud or harm another." Tenn. Code Ann. § 39-14-114(a). The term "forge" means to

>  (A) Alter, make, complete, execute or authenticate any writing so that it purports to:
>   (i) Be the act of another who did not authorize that act;
>   (ii) Have been executed at a time or place or in a numbered sequence other than was in fact the case; or
>   (iii) Be a copy of an original when no such original existed;
>  (B) Make false entries in books or records;
>  (C) Issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of subdivision (1)(A); or
>  (D) Possess a writing that is forged within the meaning of subdivision (a)(1) with intent to utter it in a manner specified in subdivision (1)(C)[.]

Id. § 39-14-114(b). Thus, forgery "is complete by the forgery with fraudulent intent, whether any third person be actually injured or not." State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984); see also State v. Lisa Ann Bargo, No. E1999-00156-CCA-R3-CD, 2000 WL 1586466, at *4 (Tenn. Crim. App., Knoxville, Oct. 25, 2000). Similarly, the criminal simulation statute provides, in relevant part,

>  (a) A person commits an offense of criminal simulation who:
>  (1) With intent to defraud or harm another:
>   (A) Makes or alters an object, in whole or in part, so that it appears to have value because of age, antiquity, rarity, source, or authorship that it does not have;
>   (B) Possesses an object so made or altered, with intent to sell, pass, or otherwise utter it; or
>   (C) Authenticates or certifies an object so made or altered as genuine or as different from what it is[.]

Tenn. Code Ann. § 39-14-115. Again, there is no requirement that the person committing the offense receive anything in return. Nevertheless, both statutes provide that the offense "is punishable as theft pursuant to § 39-14-105, but in no event shall [the offense] be less than a Class E felony." Id. §§ 39-14-114(c), -115(c).

A person commits the offense of theft of property "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103. Additionally, a person commits the offense of theft of services who:

>  (1) Intentionally obtains services by deception, fraud, coercion, false pretense or any other means to avoid payment for the services;

(2) Having control over the disposition of services to others, knowingly diverts those services to the person's own benefit or to the benefit of another not entitled thereto; or

(3) Knowingly absconds from establishments where compensation for services is ordinarily paid immediately upon the rendering of them, including, but not limited to, hotels, motels and restaurants, without payment or a bona fide offer to pay.

Id. § 39-14-104. Clearly, an essential element of both theft of property and theft of services is the receipt of property or services.

In setting the punishment for theft, the legislature established different classifications or grades depending on the value of the property or services obtained. Thus, theft of property and/or services is:

(1) A Class A misdemeanor if the value of the property or services obtained is five hundred dollars ($500) or less;

(2) A Class E felony if the value of the property or services obtained is more than five hundred dollars ($500) but less than one thousand dollars ($1,000);

(3) A Class D felony if the value of the property or services obtained is one thousand dollars ($1,000) or more but less than ten thousand dollars ($10,000);

(4) A Class C felony if the value of the property or services obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000); and

(5) A Class B felony if the value of the property or services obtained is sixty thousand dollars ($60,000) or more.

Id. § 39-14-105.

Under the Defendant's interpretation of these statutes, the provisions providing that forgery and criminal simulation be punished as theft actually add an additional element to the crimes if the crimes are to be anything higher than Class E felonies. The Defendant asserts that forgery and criminal simulation are both E felonies, but if the person committing the crimes actually obtains goods or services, the crimes could be as serious as B felonies, depending on the value of the goods or services obtained. Thus, if a defendant forged a check in the amount of $300,000 but was unsuccessful at his or her attempt to cash that check, that defendant would have committed the same degree or grade of forgery as a defendant who forged a check for $10 but was unsuccessful at cashing the check. Furthermore, a defendant who forged a check in the amount of $300,000, received money from the bank, and then was arrested as he or she exited the bank could be convicted of a Class B felony, while a defendant who forged a check for the same amount, tried to cash it, and was arrested prior to receiving any money could only be convicted of a Class E felony. Also, under this interpretation, it appears that a defendant who was unsuccessful at his or her attempt to cash a check for $300,000 could be charged with attempted forgery, rather than the actual offense of forgery, and be convicted of a Class C felony, because an attempt to commit a crime is one classification lower than the most serious crime attempted. See id. § 39-12-107(a). This seems to us to be an absurd result.

-4-

From reading the theft statutes, it is clear that the legislature intended to punish theft according to the seriousness of the actions of the offender. The legislature determined that it was more serious to commit theft of over sixty thousand dollars of property or services than to commit theft of less than five hundred dollars of property or services. See id. § 39-14-105. Thus, the former was determined to be a Class B felony while the latter was determined to be a Class A misdemeanor. See id. By asserting that forgery and criminal simulation are "punishable as theft," we believe that the legislature intended to punish those offenses according to the seriousness of actions of the offender. Although the theft statute referenced by the forgery and criminal simulation statutes grades the crime of theft according to the "value of the property or services obtained," we believe that the term "obtained" relates only to the crime of theft, which requires the actual receipt of property or services. See id. §§ 39-14-103 to -105. The crimes of forgery and criminal simulation do not require actual receipt of property or services, therefore the seriousness of the offense should not depend on the value of the property or services actually received. See id. §§ 39-14-114, -115. It can hardly be disputed that it is more serious to forge a writing in the amount of $300,000 with the intent to defraud or harm another than it is to forge a writing in the amount of $10 with the intent to defraud or harm another. See id. § 39-14-114(a). Likewise, it is more serious to, with intent to defraud or harm another, make or alter an object so that it appears to be worth $300,000, when it does not have that value, or possess such an object with the intent to sell, pass, or otherwise utter it, rather than to do the same with an object appearing to be worth $10. Therefore, we believe that the legislature intended to punish both forgery and criminal simulation according to the apparent value of the writing forged or the object made or altered. The references to the theft statute then require grading the crimes of forgery and criminal simulation according to the apparent value of the writing or object, using the values set forth in the theft grading statute. See id. §§ 39-14-105, -114(c), -115(c).

Accordingly, we hold that the indictment charging the Defendant with forgery in the amount of $250,000 and criminal simulation in the amount of $250,000 properly charged the Defendant with two Class B felonies. The trial court thus erred by dismissing the indictment to the extent that it reflected Class B felonies and by amending the indictment to reflect Class E felonies due to the State's admission that the Defendant received no property or services. Therefore, we reverse the order of the trial court dismissing and amending the indictment and reinstate the indictment as originally charged.

_____
DAVID H. WELLES, JUDGE