IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs April 26, 2017 at Knoxville

## STATE OF TENNESSEE v. GREGORY RICARDO MCDONALD III

**Appeal from the Circuit Court for Coffee County**
**No. 40,443F     Vanessa A. Jackson, Judge**

_____

### No. M2015-02004-CCA-R3-CD

_____

Following a bench trial, the Defendant, Gregory Ricardo McDonald III, was convicted of one count of criminal impersonation, a Class B misdemeanor; two counts of forgery of $500 or less, a Class E felony; and one count of identity theft, a Class D felony. See Tenn. Code Ann. §§ 39-14-105, -14-114, -14-150, -16-301 (2012). The trial court subsequently imposed a total effective sentence of twelve years. In this appeal as of right, the Defendant contends (1) that the evidence was insufficient to sustain his convictions and (2) that his statement to police should have been excluded because "there was not an adequate waiver executed in acknowledgement of his" Miranda v. Arizona, 384 U.S. 436 (1966), warnings. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

John E. Nicoll, District Public Defender; Jesse Stockwell, Assistant District Public Defender (at trial); and C. Brent Keeton, Manchester, Tennessee (on appeal), for the appellant, Gregory Ricardo McDonald III.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Ann Thompson, Senior Counsel; Charles Craig Northcott, District Attorney General; and Marla R. Holloway, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

Greta Curbow testified at trial that she was a supervisor at the Tennessee Department of Safety and Homeland Security's Driver Services Center in Tullahoma, Tennessee. Ms. Curbow reviewed an application for a driver license that was submitted at the Driver Services Center on September 10, 2012. The name listed on the application was Brian Lyle McDonald. The application was also signed Brian Lyle McDonald. For proof of identity, it was noted on the application that a certified California birth certificate for Brian Lyle McDonald had been presented. The application also noted that the social security number provided on the form matched the name and date of birth for Brian Lyle McDonald.

Ms. Curbow testified that a learner permit was issued that day because there was no one available at the Driver Services Center to administer the required road test for a driver license. The name Brian Lyle McDonald and the social security number provided were not in the Department of Safety and Homeland Security's database, so a new license number was issued for the learner permit. The learner permit was signed Brian Lyle McDonald using a computer signature pad at the Driver Services Center. Ms. Curbow identified the Defendant as the man in the photograph on the learner permit issued under the name Brian Lyle McDonald. Ms. Curbow admitted that she did not personally assist the Defendant with the application or speak to the Defendant on September 10, 2012.

Detective Jennifer West of the Murfreesboro Police Department (MPD) testified that she knew the Defendant and interviewed him about the learner permit. Det. West recalled that she Mirandized the Defendant before interviewing him. Det. West explained that she turned the rights waiver form toward the Defendant and read it to him. Det. West further explained that she waited for the Defendant to acknowledge each right before moving on to the next one. Det. West believed that the Defendant understood his rights. Det. West admitted that the Defendant had signed the rights waiver form on the "name printed" line. However, Det. West testified that signing on the wrong line was a common mistake. A video recording of the interview was played for the trial court. The Defendant told Det. West that he got the learner permit in an attempt to help him find employment because his status as a registered sex offender made it hard for him to get a job.

Rick Jones testified that in 2012, he was employed in the Tennessee Highway Patrol's identity crimes unit. Mr. Jones was contacted by the MPD after the Defendant was arrested and his fingerprints did not match the name on the learner permit he provided the arresting officer. Mr. Jones confirmed the Defendant's fingerprints and that Brian Lyle McDonald was an actual person. However, Mr. Jones admitted that he was unable to locate or speak to Brian Lyle McDonald.

Based upon the foregoing, the trial court convicted the Defendant of criminal impersonation, two counts of forgery of $500 or less, and identity theft. Following a

sentencing hearing, the trial court sentenced the Defendant to six months and imposed the statutorily mandated fine of $500 for the criminal impersonation conviction. The trial court sentenced the Defendant to six years for each of the forgery convictions and twelve years for the identity theft conviction. The trial court ordered all of the Defendant's sentences to run concurrently with his sentence for identity theft, for a total effective sentence of twelve years. This timely appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions. Regarding his criminal impersonation conviction, the Defendant argues that there was no evidence that he intended to injure or defraud the State of Tennessee because he sought to "simply have a form of identification . . . [so] he could obtain a job and a legal source of income." Likewise, the Defendant argues that there was no evidence that he intended to defraud or harm the State of Tennessee with respect to the forgery convictions. Regarding the identity theft conviction, the Defendant again argues that there was no evidence that he intended to commit an unlawful act by obtaining a learner's permit with the personal identifying information of another person. The Defendant also argues that there is no proof that Brian Lyle McDonald did not consent to the use of his identifying information or that the Defendant had used that information without "lawful authority." The State responds that the evidence was sufficient to sustain the Defendant's convictions.

### A. Standard of Review

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely

upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

## B. Criminal Impersonation

As pertinent to our review, "[a] person commits criminal impersonation who, with intent to injure or defraud another person . . . [a]ssumes a false identity." Tenn. Code Ann. § 39-16-301(a)(1). As used here, the term "person" includes any "governmental subdivision or agency." Tenn. Code Ann. § 39-11-106(a)(27). This type of criminal impersonation is a Class B misdemeanor. Tenn. Code Ann. § 39-16-301(c)(1). However, "if the criminal impersonation was committed to falsely obtain a driver license or photo identification license, the maximum fine of five hundred dollars . . . shall be imposed."[1] Id.

The Defendant contends that there was no evidence that he intended to injure or defraud the State of Tennessee by falsely obtaining a learner permit because he obtained the learner permit so "he could obtain a job." However, "[t]o establish the offense of criminal impersonation, the [S]tate is not required to show proof of why the defendant sought to defraud the [victim], only that he intended to misrepresent his true identity." State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995). Furthermore, our legislature has deemed the act of falsely obtaining a driver license or photo identification license by criminal impersonation so harmful in and of itself that it has imposed a mandatory minimum sentence of a $500 fine. See Tenn. Code Ann. § 39-16-301(c)(1).

---

[1] On appeal, the Defendant contends that this provision prohibits any incarceration for criminal impersonation committed to falsely obtain a driver license. However, there is no language in the statute prohibiting incarceration, and it is clear from the plain language of the statute that this provision provides a mandatory minimum sentence of a $500 fine for such criminal impersonation. As such, we conclude that there is no merit to the Defendant's contention.

Here, there was ample evidence that the Defendant intended to misrepresent his true identity when he obtained a learner permit under the name Brian Lyle McDonald. Accordingly, we affirm the Defendant's conviction for criminal impersonation.

## C. Forgery

The offense of forgery occurs when a person "forges a writing with intent to defraud or harm another." Tenn. Code Ann. § 39-14-114(a). The applicable terms "forge" and "writing" are defined as follows:

> (1) "Forge" means to:
> > (A) Alter, make, complete, execute or authenticate any writing so that it purports to:
> > > (i) Be the act of another who did not authorize that act;
> > > (ii) Have been executed at a time or place or in number sequence other than was in fact the case; or
> > > (iii) Be a copy of an original when no such original existed;
> > (B) Make false entries in books or records;
> > (C) Issue, transfer, register the transfer of, pass, publish or otherwise utter a writing that is forged within the meaning of subdivision (b)(1)(A); or
> > (D) Possess a writing that is forged within the meaning of subdivision (b)(1)(A) with intent to utter it in a manner specified in subdivision (b)(1)(C); and
> (2) "Writing" includes printing or any other method of recording information, money coins, tokens, stamps, seals, credit cards, badges, trademarks, and symbols of value, right, privilege or identification.

Tenn. Code Ann. § 39-14-114(b).

The crime of forgery does not require "actual receipt of property or services" and is completed regardless of whether the defendant takes anything from the victim. State v. Odom, 64 S.W.3d 370, 372, 374 (Tenn. Crim. App. 2001). Put another way, "forgery is completed by the forgery with fraudulent intent, whether any third person be actually injured or not." Id. at 372 (quoting State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984)) (internal quotation marks omitted).

The Defendant was convicted of forging the driver license application and the learner permit by signing those items Brian Lyle McDonald. The Defendant contends that the evidence was insufficient because there was no evidence that he intended to harm or defraud the State of Tennessee. As discussed above regarding the criminal impersonation conviction, the act of falsely obtaining a form of state-issued identification

is in and of itself harmful to the State of Tennessee. Here, the evidence was sufficient to establish that the Defendant forged the driver license application and the signature on the learner permit with the "fraudulent intent" to falsely obtain the permit. Accordingly, we affirm the Defendant's convictions for forgery.

### D. Identity Theft

The offense of identity theft is defined as follows:

A person commits the offense of identity theft who knowingly obtains, possesses, buys, or uses, the personal identifying information of another:
> (A) With the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain credit, goods, services or medical information in the name of such other person; and
> (B)(i) Without the consent of such other person; [or]
> > (ii) Without the lawful authority to obtain, possess, buy or use that identifying information.

Tenn. Code Ann. § 39-14-150(b)(1).

The Defendant contends that there was no evidence that he used the personal identifying information of Brian Lyle McDonald with the intent to commit an unlawful act. However, it is illegal for any person to knowingly make "false or fraudulent certification as to the person's identification[ or] date of birth . . . when making [an] application for a driver license or photo identification license." Tenn. Code Ann. § 55-50-321(e). As such, there was sufficient evidence that the Defendant used the personal identifying information of another with the intent to commit an unlawful act.

Likewise, we reject the Defendant's argument that the State failed to prove that Brian Lyle McDonald did not consent to the use of his personal identifying information by the Defendant or that the Defendant acted without the "lawful authority" of Brian Lyle McDonald. Mr. Jones testified that he was unable to locate or speak to Brian Lyle McDonald. However, there can be no "lawful authority" to use a person's identifying information to commit an unlawful act, such as falsely obtaining a learner permit.[2] Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's conviction for identity theft.

### II. __Miranda__ Waiver

---

[2] With respect to his forgery convictions, the Defendant similarly argues that there was no evidence that Brian Lyle McDonald "did not authorize the alleged act." However, we reject that argument for the same reasons stated here.

The Defendant contends that his statements to Det. West should have been excluded because "there was not an adequate waiver executed in acknowledgement of [the Defendant's] Miranda warnings." The Defendant argues that the rights waiver form "was not filled out properly" and that "[t]here is no signature on the waiver" form "where the [Defendant] was supposed to sign." The State responds that the Defendant was properly advised of his constitutional rights and waived them before speaking to Det. West.

A defendant's statements "made during the course of custodial police interrogation are inadmissible as evidence in a criminal case unless the State establishes that the defendant was advised of certain constitutional rights and waived those rights." State v. Anderson, 937 S.W.2d 851, 853 (Tenn. 1996) (citing Miranda, 384 U.S. at 444). However, "[l]ack of an explicit written waiver of the right to remain silent or the right to counsel after Miranda warnings does not per se require exclusion of a confession if waiver can be found from facts and surrounding circumstances." State v. Robinson, 622 S.W.2d 62, 67 (Tenn. Crim. App. 1980) (citing North Carolina v. Butler, 441 U.S. 369 (1979)).

Here, the Defendant signed the rights waiver form, albeit on the wrong line, after Det. West reviewed the Defendant's constitutional rights and the rights waiver form with him. Det. West testified that she turned the rights waiver form toward the Defendant, read it to him, and asked him if he understood each right. Det. West recalled that she waited for the Defendant to acknowledge each right before she moved on to the next one. Det. West believed that the Defendant understood his rights when he signed the rights waiver form. Det. West also testified that it was a common mistake to sign the rights waiver form on the "name printed" line. The video recording of Det. West's interview with the Defendant corroborated her testimony. In light of the facts and surrounding circumstances, we conclude that the Defendant waived his Miranda rights prior to speaking with Det. West and that this issue is devoid of merit.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE