FILED

03/22/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 13, 2021 Session

## STATE OF TENNESSEE v. RONALD LYONS, JAMES MICHAEL USINGER, LEE HAROLD CROMWELL, AUSTIN GARY COOPER, AND CHRISTOPHER ALAN HAUSER

**Appeal from the Criminal Court for Davidson County
Nos. 2017-A-79; 2017-B-1143     Cheryl A. Blackburn, Judge**

_____

### No. M2019-01946-CCA-R3-CD

_____

Ronald Lyons, James Michael Usinger, Lee Harold Cromwell, Austin Gary Cooper, and Christopher Alan Hauser, Defendants, were named in a 302-count indictment by the Davidson County Grand Jury for multiple counts of forgery and fraudulently filing a lien for their role in filing a total of 102 liens against 42 different individuals with the office of the Tennessee Secretary of State. Defendant Cooper was also named in a second indictment for five additional counts of forgery and five additional counts of fraudulently filing a lien. Prior to trial, Defendant Hauser filed a motion to dismiss for improper venue. Defendants Cromwell and Cooper joined in the motion. The trial court denied the motion after a hearing. After a jury trial, each defendant was convicted as charged in the indictment. The trial court sentenced Defendant Cromwell to an effective sentence of twenty-five years; Defendant Cooper to an effective sentence of fifty years; Defendant Lyons to an effective sentence of twenty-two years; Defendant Usinger to an effective sentence of twenty-one years; and Defendant Hauser to an effective sentence of twenty years. After motions for new trial and several amended motions for new trial were filed, the trial court held a hearing. The trial court denied the motions in a lengthy and thorough written order. Each defendant appealed, raising various issues challenging their convictions and sentences. After deep review, we affirm the all judgments and all sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Emma Rae Tennent (on appeal), Assistant Public Defendant; Martesha Johnson, District Public Defender; Jared Mollenkoff and Stella Yarbrough (at trial), Assistant District Public Defenders, Nashville, Tennessee, for the appellant, Christopher Alan Hauser.

Lesli O. Wright[1] (at trial and on appeal), Nashville, Tennessee, for the appellant, Austin Gary Cooper.

Manuel P. Russ (at trial and on appeal), Nashville, Tennessee, for the appellant, Ronald James Lyons.

C. Leann Smith (on appeal), Nashville, Tennessee, for the appellant, James Michael Usinger.

Sarah R. King (at trial and on appeal), Nashville, Tennessee, for the appellant, Lee Harold Cromwell,

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Roger D. Moore and Byron Pugh, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On January 30, 2017, the Davidson County Grand Jury returned a multi-count indictment containing 302 counts that named eight defendants: Michael Robert Birdsell, Victor D. Bunch, Austin Gary Cooper, Lee Harold Cromwell, Christopher Alan Hauser, Ronald James Lyons, Mark A. McConnell, and James Michael Usinger. All of the odd numbered counts of the indictment charged an individual defendant with one count of fraudulent filing of a lien in violation of Tennessee Code Annotated section 39-17-117 while all even numbered counts of the indictment charged forgery in violation of Tennessee Code Annotated section 39-14-114. Each count of the indictment referred to only one of the defendants and named one victim. In May of 2017, Defendant Cooper was named in an indictment in case number 2017-B-1143, charging him with an additional five counts of forgery and five counts of fraudulently filing a lien. All of the counts in both cases were based on the electronic filing of Uniform Commercial Code (UCC) Financing Statements with the Tennessee Secretary of State's office in Nashville against various individuals.

---

[1] In at least one place in the transcript, counsel for Defendant Cooper is referred to as Leslie R. Wright. We have chosen to utilize the name as listed on the cover page of Defendant Cooper's brief and on pleadings filed in the trial court.

Defendants Cooper, Cromwell, Hauser, Lyons, and Usinger were tried together.[2] Counts 51-70 of the indictment pertained to Defendant Cooper; Counts 71-98 to Defendant Cromwell; Counts 99-140 to Defendant Hauser; Counts 141-200 to Defendant Lyons; and Counts 259-302 to Defendant Usinger. Defendant Cooper's additional five counts of filing a fraudulent lien and five counts of forgery in case number 2017-B-1143 were consolidated with the 302-count indictment for purposes of trial.

Prior to trial, Defendant Hauser filed a motion for change of venue. In the motion, Defendant Hauser asked the trial court to dismiss the indictment for lack of venue in Davidson County because no element of any of the offenses charged in the indictment was alleged to have occurred in Davidson County. Defendant Hauser alleged the electronic submission of the documents from another county did not subject him to venue in Davidson County. Defendants Cromwell and Cooper filed motions joining in Defendant Hauser's motion for change of venue.

The trial court held a hearing on the venue motion. The trial court asked at the outset of the hearing why venue was an issue being dealt with prior to trial because "the jury has to find venue." The three defendants joining in the motion, Defendant Hauser, Cromwell, and Cooper, argued that venue in Davidson County was improper because the liens at issue were not filed in Davidson County. Specifically, Defendant Hauser asserted he electronically filed the documents pertaining to the counts charged against him in Cocke County, while Defendants Cooper and Cromwell claimed that they electronically filed documents relating to their charges in Anderson County. Each defendant claimed venue was thus improper in Davidson County. The State disagreed, arguing that pretrial litigation of venue was improper under Tennessee Rule of Criminal Procedure 12(b)(1).

At the conclusion of the hearing, the trial court took the matter under advisement. In a thorough written order, the trial court denied the motion, finding that the State had to prove that one element of each offense occurred in Davidson County and the fact that the documents had to be filed with the Secretary of State's office in Nashville, even if electronically, established venue in Davidson County.

*Proof at Trial*

At trial, approximately thirty witnesses testified on behalf of the State. The testimony of the various witnesses revealed that between September 2015 and October

---

[2] It is unclear what became of the counts of the indictment pertaining to the other three named defendants: Michael Robert Birdsell (Counts 1-16), Victor D. Bunch (Counts 17-50), and Mark A. McConnell (Counts 201-158) in case number 2017-A-79 or Victor D. Bunch (Counts 1-10) in case number 2017-B-1143. Suffice it to say, they are not the subject of this appeal.

- 3 -

2016, Defendants electronically filed a total of 102 liens against 42 different individuals with the Tennessee Secretary of State's office in Nashville, Tennessee. Each lien claimed a possessory amount of either four, six, eight, or twelve million dollars in "the money of account or in lieu of the money of account in Federal Reserve Notes or a Bank-Draft of the United States-Dollars or whatever currency is prescribed as lawful currency of all debts Public or Private in the County in which this Claim executed."

In order to explain the documents at issue, Nathan Burton, the Director of Business Services at the Tennessee Secretary of State's office in Nashville testified for the State. In his role, Mr. Burton was in charge of staff that files "documents related to business formations, as well as UCC lien filings and various other business document filings." He described a UCC lien filing as:

> a document that lets, when a company, typically a financial institution, loans money to a business, or if there is a person that may be an individual that loans money to another individual for a business transaction, they file something called a Uniform Commercial Code Financing Statement. What that statement does is it puts the world on notice that they have an interest in whatever type of collateral that was used to make that loan.

Mr. Burton further explained that a UCC financing statement is a document that is filed when a business transaction involves a loan. The "UCC1" as it is commonly called, does not create a creditor/debtor relationship; it merely "puts the world on notice" that a creditor may have an interest in the collateral used to make the loan.

Mr. Burton explained that UCC filings are received by the Secretary of State's office, filed, and recorded on a server in Nashville. They can be filed either in person or electronically. Mr. Burton explained the steps to electronically file a financing statement on the website of the Secretary of State. To file the document electronically, the submitter is required to provide his or her contact information, the contact information for the debtor, the contact information for the secured party (in this case the submitter of the financing statement), submit a value for the maximum principal indebtedness, describe the collateral, and pay a fee for the filing. The value of the maximum principal indebtedness is assigned by the submitter of the information. Mr. Burton admitted that he was unsure how a submitter determined the maximum principal indebtedness, explaining that he thought it would be equivalent to the value of what was being financed or the submitter's estimation of whatever this collateral might be worth. The financing statement requires the submitter to sign the document electronically and agree with two attestation boxes, one of which "basically says that you understand that it is a felony to file a document with no underlying debt." The submitter must also use a credit card to pay the associated filing fees. Once

submitted, the information is placed on "a server that's located in Davidson County" and is also publicly available on the Secretary of State's website.

During the testimony of Mr. Burton, the State admitted over 100 exhibits. These exhibits contained financing statement documents, generally including: (1) a UCC1 financing statement and accompanying acknowledgement page; (2) a UCC3 amendment to the financing statement and acknowledgement page; (3) payment documents and receipts; and in several cases, (4) documents concerning the termination or removal of the financing statements. During the admission of each of these exhibits, Mr. Burton testified similarly. He described the UCC1 financing statement as the document submitted electronically. He testified to the name and address of the person submitting the document, names and addresses for the debtor, the secured party, and the collateral description as entered by the submitter as reflected on each document. The amount listed on each lien varied, from $4 million to $12 million. One example included the following language in the collateral description:

Claim of lien May 23rd, 2016, in the amount of eight million in the money of account, or in lieu of the money or in federal reserve notes or a bank draft to United States dollars of whatever currency's prescribed as lawful currency in satisfaction of all debts, public or private, and the county in which this claim was executed.

This particular UCC1 listed the maximum principal indebtedness as "$0." The UCC1 was accompanied by a UCC3 amendment to the original financing statement and related payment documents. This particular UCC3 assigned the UCC1 to the U.S. Treasury in Washington, D.C.

Mr. Burton explained that a lien based on a UCC1 lapses after five years unless the submitter files a continuation within a six-month period, extending the UCC1 for an additional five years. There is no real mechanism in place to get a lien removed. An individual "can file a termination statement" that does not remove the lien. The lien "still shows in the record for . . . one year after [ ]the initial lapse date." Mr. Burton explained that there is really only one "very specific" way to get a lien removed and it applies to public officials. This provision was passed by the legislature in 2017.

In all, Defendants Cooper, Hauser, Lyons, and Usinger each filed liens purporting to have a $12 million possessory interest in the property of the following individuals: Buddy Bradshaw, the county mayor of Loudon County; Mark Brown, an attorney from Knoxville; Michael Menefee, Mr. Brown's law partner in Knoxville; Michael Pemberton, a Circuit Court Judge for the Ninth Judicial District of Tennessee; John Weaver, Chancellor for the Sixth Judicial District of Tennessee; Tim Burchett, the mayor of Knox County;

Howard Hogan, the Clerk and Master of Knox County; Lisa Niles, the Circuit Court Clerk for Loudon County; and Ron Woody, the County Executive for Roane County.

Defendant Lyons filed a second lien against each of these individuals in which he claimed an additional interest of $12 million. Defendant Usinger filed second liens against Mr. Brown, Mr. Menefee, Chancellor Weaver, Mr. Burchett, Mr. Hogan, and Ms. Niles for $12 million. Defendant Usinger filed a third lien against Ms. Niles for $12 million.

Defendant Cromwell filed liens claiming an $8 million interest in the property of James Akagi, the Chief of Police for the City of Oak Ridge; Victoria Bannach, an Assistant District Attorney; Dave Clark, the District Attorney General for the Seventh Judicial District; Donald Elledge, the Criminal and Circuit Court Judge for Anderson County; Grant Gouldie; and William Jones, the Circuit Court Clerk for Anderson County. Defendant Cromwell also filed liens against these same individuals for $4 million. Defendant Cooper filed liens against Roger Miller, a General Sessions Judge in Anderson County; Mr. Clark and Mr. Jones for $4 million.

Defendant Lyons filed liens claiming a $6 million possessory interest in the property of Rhonda Day, the City Court Clerk for the Morristown Police Department; Bill Gibbons, Commissioner of the Department of Safety and Homeland Security; Randell Noe, a lawyer in Morristown; Roger Overholt, Chief of the Morristown Police Department; Matthew Sexton, Municipal Court Judge in Morristown; Reid Spalding; Richard Webb, an officer with the Morristown Police Department. Defendant Lyons filed additional liens claiming a $6 million possessory interest against Ms. Day, Mr. Noe, Mr. Overholt, and Judge Sexton. Defendant Cooper also filed a lien for $4 million against Commissioner Gibbons and Defendant Usinger filed a lien for $4 million against Susan Lowe.

Defendants Cooper, Hauser, and Usinger also all filed liens against Tracy Trott, the Commander of the Tennessee Highway Patrol. Defendants Hauser and Usinger filed a lien against David Purkey, Commissioner of Safety and Homeland Security for the State of Tennessee for $4 million. Defendant Cooper filed liens against Don Layton, a General Sessions Judge in Anderson County; and Paul White, the Anderson County Sheriff for $4 million. Defendant Cromwell filed liens against Judge Roger Miller; and Ben Higgins, a special investigator with the Oak Ridge Police Department for $4 million.

Defendant Hauser filed liens against James Acuff; Lu Ann Ballew; Telford Forgety, a Chancellor the Fourth and Fifth Judicial Districts of Tennessee; Jeffrey Greene, a lawyer from Cocke County; Raquel Hatter; Melissa Hauser, Defendant Hauser's ex-wife; retired Circuit Judge Ben Hooper; Peggy Lane; Judge Duane Sloane; and Judge Richard Vance for $4 million.

- 6 -

Lastly, Defendant Usinger filed liens against Kay Soloman-Armstrong, the Clerk and Master of Greene County; Joy Nunnally, the Register of Deeds of Greene County; and John Stills, a deputy in the Greene County Sheriff's Department, for $4 million.

Once all the exhibits were entered into evidence through the testimony of Mr. Burton, prior to a lunch break on the first day of trial, the trial court commented that it wanted to "make this easier for the jury and during our deliberations as well as the record." The trial court proposed to secure 102 manila files and to place each exhibit into a folder. On the outside of the folder, the trial court proposed placing a label with the exhibit number, count, name of the defendant, UCC filing number, alleged debtor, and filing date. Counsel for the State agreed with the idea but counsel for Defendant Hauser objected because the value of the documents was contested. The trial court explained that it would use "the amount . . . listed on the financial statement." The court explained that the label would contain the following information: (1) the exhibit number; (2) the corresponding count of the indictment; and (3) the financial statement amount.

Co-defendant Michael Robert Birdsell, from Anderson County, testified that he had been charged with eight counts of filing a fraudulent lien and eight counts of forgery in the same indictment in Counts 1-16. Mr. Birdsell knew Defendant Cooper and the other Defendants but testified that he did not meet Defendant Lyons until after he was incarcerated.

In March of 2014, Mr. Birdsell was pulled over by Officer Shannon Runyon in Anderson County for failing to wear a seatbelt. The officer informed him that there was a warrant for his arrest. Mr. Birdsell was aware that he had missed a court date for a child support issue. Mr. Birdsell claimed that the officer searched his pants and pulled a bag out of his pants that did not belong to him. The officer claimed that the bag contained heroin. Mr. Birdsell explained that the child support matter that gave rise to the warrant was eventually resolved. He also testified that the TBI report indicated that the substance allegedly found in his pants pocket was not even a controlled substance. According to Mr. Birdsell, the drug charges were ultimately dismissed. Mr. Birdsell attempted to find a lawyer to take his case to address what he characterized as a wrongful arrest.

Around this same time, Mr. Birdsell met Defendant Cooper and a few of the other defendants at a meeting of the "Knoxville Patriots" at a restaurant in Knoxville. At these meetings, the people in attendance "researched law." After one of the meetings, Mr. Birdsell told Defendant Cooper about his legal problems. Defendant Cooper's response was, "well, that's four million dollars." Defendant Cooper said that he could teach Mr. Birdsell how to represent himself. Though Defendant Cooper did not hold himself out to be a lawyer, he told Mr. Birdsell that he represented people. Defendant Cooper told Mr. Birdsell that he charged $6,500 for his help in filing liens. Mr. Birdsell gave Defendant

Cooper $500 in cash that night but eventually paid him the full $6,500 in exchange for help with filing liens. Defendant Cooper instructed Mr. Birdsell to go home and type up a statement of facts and send them to Defendant Cooper via email. Defendant Cooper and Mr. Birdsell corresponded occasionally about the matter, but they never went to court. Mr. Birdsell explained that he merely filled out paperwork as instructed by Defendant Cooper. On one occasion, Mr. Birdsell met Defendant Cooper and Defendant Usinger at a library and Defendant Cooper filed documents on a computer. Mr. Birdsell used his credit card to pay the fees associated with filing the documents. The filing fee was $15 for each document.

The State introduced testimony from some of the alleged debtors of each defendant. Only two of these witnesses testified that they actually knew Defendant Hauser, including his ex-wife and Attorney Jeffrey Greene. None of the witnesses claimed to have a financial arrangement, either as a borrower or a lender, with Defendant Hauser.

The State also introduced testimony from various people named on liens filed by Defendant Cooper. Again, none of the witnesses testified that they personally knew Defendant Cooper. Several testified that they were successful in having liens removed.

With respect to liens filed by Defendant Lyons, the State introduced the testimony of several alleged victims. Again, the testimony of the witnesses was substantially similar to previous witnesses in that they did not personally know Defendant Lyons and did not owe him any money or have any reason to believe that Defendant Lyons had a legal basis for filing a lien against them.

Ben Higgins, a special investigator with the Oak Ridge Police Department, testified that he received information from Defendant Cromwell via certified mail that Defendant Cromwell had filed a lien against him in the amount of $4 million. Special Investigator Higgins agreed that no money was ever taken out of any of his personal accounts and no property was ever seized as a result of the lien.

Likewise, Kay Armstrong, the clerk and master of the chancery court in Greene County, Tennessee, testified that Defendant Usinger filed a UCC lien against her. Ms. Armstrong testified that she did not know Defendant Usinger and certainly did not owe him any money. As a result of this lien, Ms. Armstrong claimed that her "personal financing was jeopardized."

Colonel Tracy Trott, the Commander of the Tennessee Highway Patrol, testified that he did not know any of the defendants personally and explained that he had never had any financial indebtedness to or dealings with any of the defendants. Colonel Trott learned

from a sheriff in East Tennessee that "there would be a lien in the Secretary of State's [o]ffice" against him with his name on it. Colonel Trott was able to use the legal department in his office to discover that there were multiple liens filed against him and to have the liens removed. Colonel Trott admitted that as far as he knew, no one had tried to enforce the liens against him.

At the conclusion of the proof, each defendant moved for a judgment of acquittal. The trial court denied the motions. The jury found each defendant guilty as charged. The trial court held a sentencing hearing, at which the defendants were sentenced as follows:

| Defendant | Convictions | Sentence |
|---|---|---|
| Defendant Cooper | Case No. 2017-A-79<br>• 10 counts filing a fraudulent lien (Counts 51, 53, 55, 57, 59, 61, 63, 65, 67, and 69)<br>• 10 counts forgery with the jury affixing a value of $250,000 (Counts 52, 54, 56, 58, 60, 63, 64, 66, 68, and 70) | 2 years for each conviction for filing a fraudulent lien; 25 years for each conviction for forgery, to run concurrently with each other but consecutively to the sentences in case number 2017-B-1143, for a total effective sentence of 50 years as a Range I, Standard Offender |
| | Case No. 2017-B-1143<br>• 5 counts filing a fraudulent lien (Counts 11, 13, 15, 17, and 19)<br>• 5 counts forgery with the jury affixing a value of $250,000 (Counts 12, 14, 16, 18, and 20) | 2 years for each conviction for filing a fraudulent lien and 25 years for each conviction for forgery, to be served concurrently as a Range I, Standard Offender |
| Defendant Cromwell | Case No. 2017-A-79<br>• 14 counts filing a fraudulent lien (Counts 71, 73, 75, 77, 79, 81, 83, 85, 97, 89, 91, 93, 95, and 97) | 2 years for each conviction for filing a fraudulent lien and 25 years for each conviction for forgery, to be served concurrently, for a total effective sentence of 25 years as a Range I, Standard Offender |

| | | |
|---|---|---|
| | • 14 counts of forgery with the jury affixing a value of $250,000 (Counts 72, 74, 76, 78, 80, 82, 84, 86, 88, 90, 92, 94, 96, and 98) | |
| Defendant Hauser | Case No. 2017-A-79<br>• 21 counts filing a fraudulent lien (Counts 99, 101, 103, 105, 107, 109, 111 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 133, 135, 137, and 139)<br>• 21 counts of forgery with the jury affixing value of $250,000 (Counts 100, 102, 104, 106, 108, 110, 112, 114, 116, 118, 120, 122, 124, 126, 128, 130, 132, 134, 136, 138, and 140) | 2 years for each conviction for filing a fraudulent lien and 20 years for each conviction for forgery, to be served concurrently, for a total effective sentence of 20 years as a Range I, Standard Offender |
| Defendant Lyons | Case No. 2017-A-79<br>• 30 counts of filing a fraudulent lien (Counts 141, 143, 145, 147, 149, 151, 153, 155, 157, 159, 161, 163, 165, 167, 169, 171, 173, 175, 177, 179, 181, 184, 185, 187, 189, 191, 193, 195, 197, and 199)<br>• 30 counts of forgery, with the jury affixing value of $250,000 (Counts 142, 144, | 2 years for each conviction for filing a fraudulent lien and 22 years for each conviction for forgery, to be served concurrently, for a total effective sentence of 22 years as a Range I, Standard Offender |

| | | |
|---|---|---|
| | 146, 148, 150, 152, 154, 156, 158, 160, 162, 164, 166, 168, 170, 172, 174, 176, 178. 180, 182, 184, 186, 188, 190, 192, 194, 196, 198, and 200) | |
| Defendant Usinger | Case No. 2017-A-79<br>• 22 counts of filing a fraudulent lien (Counts 259, 261, 263, 265, 267, 269, 271, 273, 275, 277, 279, 281, 283, 285, 287, 289, 291, 293, 295, 297, 299, and 301)<br>• 22 counts of forgery, with the jury affixing value of $250,000 (Counts 260, 262, 264, 266, 268, 270, 272, 274, 276, 278, 280, 282, 284, 286, 288, 290, 292, 294, 296, 298, 300, and 302) | 2 years for each conviction for filing a fraudulent lien and 21 years for each conviction for forgery, to be served concurrently, for a total effective sentence of 21 years as a Range I, Standard Offender |

After sentencing, each of the defendants filed a motion for new trial. All of the defendants with the exception of Defendant Hauser filed at least one amendment to their original motion for new trial. Some of the defendants filed more than one amendment. Defendant Hauser argued that: (1) the trial court erred by denying the motion to dismiss for lack of venue; (2) the trial court erred by dismissing the motion to dismiss the forgery counts on the basis of double jeopardy; (3) the trial court erred in denying the motion for judgment of acquittal, especially due to the notable absence of alleged victims James Norman Acuff, Lu Ann Ballew, Chancellor Telford Forgety, Raquell Hatter, Howard Hogan, Judge Ben Hooper, Peggy Lane, Michael Menefee, and Judge O. Duane Sloane (Counts 99-132 of the indictment); (4) the trial court erred by affixing dollar amounts to the outside of the exhibit folders; (5) the trial court erred by allowing witnesses to testify

regarding consequences of the liens rather than actual damages; (6) the trial court erred by refusing to allow a medical expert to testify on Defendant Hauser's behalf; (7) the evidence was insufficient to support the convictions; and (8) the sentences were excessive.

Defendant Cooper raised the following issues in his motions for new trial: (1) the trial court erred by denying severance and change of venue; (2) the evidence was insufficient to support the convictions; (3) Defendant Cooper should not have been charged with both forgery and filing false liens; (4) Defendant was prejudiced when the State referred to witnesses by their titles; (5) the trial court erred in refusing to grant a mistrial; (7) the trial court erred by refusing to grant the motion for judgment of acquittal; (8) the trial court erred by affixing values to the outside of the exhibit folders; and (9) cumulative error warrants a new trial.

Defendant Lyons raised the following issues in his motions for new trial: (1) the evidence was insufficient to support the convictions; (2) his sentence was excessive; (3) the trial court erred by denying the motion to dismiss based on venue; (4) dual convictions for forgery and filing a fraudulent lien violate double jeopardy and due process; (5) the trial court erred by denying the motion for judgment of acquittal; (6) the trial court erred by failing to grant a motion for judgment of acquittal on counts for which there was no witness testimony; (7) the trial court erred by affixing labels on the outside of exhibit folders; (8) the trial court erred by denying the motion to sever; (9) the trial court erred by denying a motion for judgment of acquittal on counts pertaining to liens on Randy Noe, James Overholt, Matthew Sexton, Chancellor James Weaver, and Richard Webb because they were never accepted by the Secretary of State.

Defendant Cromwell raised the following issues in his motions for new trial: (1) the trial court erred in dismissing the case for lack of venue; (2) the evidence was insufficient to support the convictions; (3) the trial court improperly allowed witnesses to be referred to by their titles; (4) the trial court erred by allowing counsel for Defendant Hauser to allude to the fact that the defendants were sovereign citizens; (5) the trial court erred in denying a motion for severance; (6) the trial court erred in failing to grant a mistrial; (7) the trial court erred by refusing to grant a motion for judgment of acquittal; (8) the trial court improperly affixed labels to the outside of the exhibit folders; and (9) cumulative error requires a reversal of the convictions.

Defendant Usinger raised the following issues in his motions for new trial: (1) the trial court erred by refusing to sever the cases; (2) the evidence was insufficient; (3) the sentence was excessive; (4) the trial court erred by refusing to change venue; (5) the change in the statute for forgery requires actual harm and none of this victims in this case received actual harm; and (6) dual convictions for forgery and fraudulent filing of a lien violate double jeopardy and due process.

On appeal, each defendant raises several issues, some for the first time.[3] To complicate appellate review, some issues were abandoned or framed in different language by first one Defendant and then another.

Defendant Hauser argues that the evidence is insufficient to support his forgery convictions; that the trial court improperly commented on the evidence by affixing labels to the outside of file folders that held exhibits; and that his sentence was excessive.

Defendant Cooper argues: (1) the trial court erred in denying the motion to dismiss based on venue; (2) the trial court erred by denying a change in venue, venire, and/or a continuance; (3) the trial court erred in denying severance and/or a mistrial when Defendant Hauser implicated the co-defendants as a group of "anti-government sovereign citizens;" (4) the evidence was insufficient to support Defendant Cooper's convictions; (5) the indictments and convictions for both offenses violate double jeopardy; (6) the trial court erred in affixing labels to the outside of the file folders that held exhibits; and (7) Defendant Cooper's sentence is excessive.

Defendant Lyons argues on appeal that: (1) the evidence was not sufficient to support the convictions for forgery or fraudulent filing of a lien; (2) the State failed to establish Defendant Lyons was guilty of fraudulently filing a lien or forgery with respect to the counts involving Howard Hogan, Michael Menefee, Bill Gibbons, Reid Spaulding, and Matthew Sexton because they failed to testify at trial; (3) his sentence was excessive; (4) the trial court erred by denying the motion to dismiss based on improper venue; (5) the trial court erred by refusing to sever the defendants; (6) the counts for forgery should have been dismissed because they violate due process and double jeopardy; and (7) the trial court improperly affixed labels to the outside of exhibit folders.

Defendant Cromwell raises the following issues on appeal: (1) whether the trial court improperly denied the motion to dismiss based on venue; (2) whether the trial court erred by refusing to change venue; (3) whether the trial court erred in denying severance and/or a mistrial after Co-defendant Hauser's counsel implicated all defendants as part of an anti-government group; (4) whether the evidence was sufficient to support the convictions; (5) whether the convictions violated double jeopardy; (6) whether the trial court erred in affixing labels to the outside of exhibit folders; and (7) whether his sentence was excessive.

---

[3] We have done our best to succinctly and accurately state each issue raised by each Defendant. We have, at times, reordered or combined issues for judicial economy.

- 13 -

Defendant Usinger argues that: (1) the trial court erred by failing to sever his case from Defendant Hauser; (2) the trial court erred by refusing to grant a change of venue; (3) the trial court erred by refusing to grant a motion for judgment of acquittal; (4) the evidence is insufficient to support the convictions; (5) that the trial court improperly allowed the State to refer to witnesses by their titles; (6) that his sentence was excessive; and (7) that cumulative error entitles Defendant Usinger to a new trial.

*Analysis*

*Venue*

On appeal, Defendants Cooper, Lyons, Cromwell, and Usinger claim that the trial court erred by denying the motion to dismiss based on improper venue in Davidson County.[4] This motion cites Tennessee Rule of Criminal Procedure 8 but points to language that appears in Tennessee Rule of Criminal Procedure 18.[5] Defendants Usinger, Cooper, and Cromwell also argue that the "Waffle House shooting[,]" which took place the morning the defendants' trial started, mandated a change of venue because the "criminal suspect and his potential affiliation to the Sovereign Nation" painted the defendants as domestic terrorists. The defendants also argue that the State failed to prove venue at trial. The State, on the other hand, disagrees, insisting that the State properly proved at trial that at least one element of each offense took place in Davidson County.

*A. Pretrial Motion to Dismiss for Lack of Venue*

According to article one, section nine of the Tennessee Constitution, an accused must be tried in the county in which the crime is committed. Tenn. Const. art. I, § 9; *see also* Tenn. R. Crim. P. 18(a) ("Except as otherwise provided by statute or by these rules, offenses shall be prosecuted in the county where the offense was committed."). "Proof of venue is necessary to establish the jurisdiction of the court, but it is not an element of any offense and need only be proved by a preponderance of the evidence." *State v. Hutcherson*, 790 S.W.2d 532, 535 (Tenn. 1990); *see State v. Young*, 196 S.W.3d 85, 101 (Tenn. 2006) (holding that "[p]roof of venue is necessary to establish the jurisdiction of the court, but it is not an element of any offense"); *see also* T.C.A. § 39-11-201(e) ("No person may be convicted of an offense unless venue is proven by a preponderance of evidence."). Venue can be established by the introduction of direct evidence, circumstantial evidence, or both. *State v. Smith*, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995). "[T]he jury is entitled to draw reasonable inferences from the evidence." *Young*, 196 S.W.3d at 101-02. Moreover,

---

[4] In our view, this is distinct from the argument that the State failed to prove venue at trial.

[5] This appears to be a typographical error because Rule 8 deals with joinder of offenses and defendants. Rule 18 of the Tennessee Rules of Criminal Procedure addresses venue.

"[v]enue is a question for the jury to determine from the evidence in the case." *State v. Young*, 617 S.W.2d 661, 664 (Tenn. Crim. App. 1981).

Here, Defendants were charged with forgery in violation of Tennessee Code Annotated section 39-14-114(b)(1)(B). This offense required the State to prove the defendants made "false entries in books or records and these false entries had a value amount attached to each one. Additionally, Defendants were charged in separate and distinct with fraudulently filing a lien in violation of Tennessee Code Annotated section 39-17-117(a)(1). This offense required the State to prove in part the defendants "knowingly prepare[d], sign[ed], or file[d] any lien or other document." In order to establish venue, the State had to prove that the crimes at issue were committed in Davidson County.

After a hearing prior to trial, the trial court determined that "[t]he fact that the documents had to be filed with the Secretary of State [in Davidson County] establishes venue in this County." The trial court acknowledged that while the State could have filed charges in "the respective counties where the real property subject to the liens was located, or where [D]efendants computer-filed the UCC documents, filing in Davidson County promote[d] judicial economy." We conclude that the trial court's pretrial ruling on the motion to dismiss was proper.

The evidence needed to prove venue merely needed to satisfy the preponderance standard, not the more stringent standard of beyond a reasonable doubt. The evidence at trial did not preponderate against the trial court's determination. At trial, Mr. Burton testified that it mattered not whether a lien was delivered by hand, by mail, or electronically. It was not filed until it was placed on "a server that's located in Davidson County." Moreover, the jury heard the evidence and obviously determined that the State established venue. This issue is without merit.

Defendant Lyons argues that because counts 173, 175, 177, 179, 185, 191, and 195 were "rejected by the Secretary of State as void" they were never "filed" and therefore venue in Davidson County would never be proper as to these counts. To the contrary, Mr. Burton testified at trial that these specific liens were voided after they were filed because they were contested and "the notice that [the Secretary of State's office] sent to the secured party was returned undeliverable." The testimony at trial supports the finding that venue was proper in Davidson County on these specific counts, despite the eventual voiding of these particular liens. They were nonetheless initially filed and thus venue established.

Defendant Lyons also attempts to raise a jury unanimity issue with regard to venue on appeal by claiming that the State did not establish venue because the State "failed to distinguish the method by which [he] allegedly violated the statute." Defendant Lyons

failed to raise this issue in a motion for new trial, instead raising it for the first time on appeal. This issue is waived. *See State v. Allen*, 593 S.E.3d 145, 54 (Tenn. 2020) (stating that "[g]enerally, issues raised for the first time on appeal are waived.").

## B. *Change of Venue*

Defendants Usinger, Cooper, and Cromwell claim on appeal that the trial court abused its discretion in denying a motion to change venue filed by Defendant Cromwell prior to trial. In the motion, Defendant Cromwell indicated that "an alleged sovereign citizen" killed several people at a Waffle House in Nashville on the day prior to the start of the defendants' trial. The Waffle House tragedy resulted in a heighten media stir with some publicity regarding sovereign citizens, a group with which the defendants were alleged to have associated. Defendant Cromwell argued that the trial should be moved to a different venue to avoid prejudice. A discussion of the motion on the morning of trial seems to indicate that Defendant Hauser joined in the motion, at least orally. However, the technical record does not reflect that either Defendant Usinger or Defendant Cooper joined in the motion or filed their own motion to change venue, either pretrial or otherwise.

In general, a criminal defendant must be tried in the county where the offense was committed. Tenn. R. Crim. P. 18(a). However, a trial court may order a change of venue "when a fair trial is unlikely because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a). The decision whether to grant a defendant's motion for change of venue rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *State v. Sexton*, 368 S.W.3d 371, 387 (Tenn. 2012); *State v. Howell*, 868 S.W.2d 238, 249 (Tenn. 1993). "The mere fact that jurors have been exposed to pretrial publicity will not warrant a change of venue," nor will prejudice "be presumed on the mere showing of extensive pretrial publicity." *State v. Rogers*, 188 S.W.3d 593, 621 (Tenn. 2006) (internal citations omitted). "[I]n order to obtain relief on a claim that the trial court improperly denied a motion for a change of venue, a 'defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him.'" *Sexton*, 368 S.W.3d at 387 (quoting *Rogers*, 188 S.W.3d at 621).

When a defendant seeks a change of venue they "shall" file a motion "at the earliest date after which the cause for the change of venue is alleged to have arisen" pursuant to Tennessee Rule of Criminal Procedure 21(c). If a defendant fails to "take whatever action was reasonably available," the issue is waived. Tenn. R. App. P. 36(a); *see also State v. Rick Hanebutt*, No. W2005-01301-CCA-R3-CD, 2005 WL 2818240, at *10 (Tenn. Crim. App. Oct. 2, 2006), *perm. app. denied* (Tenn. Feb. 26, 2007).

Because Defendants Cooper and Usinger failed to file a motion requesting a change in venue, this issue is waived. Defendants Cooper and Usinger raised this issue in their motion for new trial but never actually requested the relief themselves. Moreover, on appeal, they fail to cite any legal authority to support their position as required by Tennessee Court of Criminal Appeals Rule 10(b). "Issues which are not supported by . . . citation to authorities . . . will be treated as waived in this court." *Id.*; see also Tenn. R. App. P. 27(a) (requiring "citations to the authorities"). As to Defendants Cooper and Usinger, this issue is waived.

As to Defendant Cromwell, we determine that the trial court did not abuse its discretion. The trial court reviewed an article in the USA Today newspaper that claimed the Waffle House shooter "referred to himself as a sovereign citizen." However, the trial court emphasized the court's pretrial ruling that the "trial would not include information about whether any of the defendants were alleged sovereign citizens." The trial court determined that the news coverage of the unrelated shooting did not provide a "basis to change venue." From our review of the lengthy record, we do not observe any direct use of the term "sovereign citizen" that would link any of the defendants to the Waffle House shooter, or the group as a whole. Moreover, Defendant Cromwell does not point to any specific instances of prejudice in the record that would have precluded him from receiving a fair trial. Instead, he cites one authority, *State v. Hoover*, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979), and makes vague references to Defendant Hauser's defense theory that the liens were filed "because they were sovereign citizens" to support his claim that the trial court erred in denying a change of venue.

In *Hoover*, the defendant was on bond for murder and was charged with another first-degree murder. *Id.* at 743. There was news coverage about the second murder and the defendant insisted that he was entitled to a change of venue because he could not receive an impartial jury. *Id.* at 745. The jury was extensively questioned prior to being sequestered. The trial court was satisfied that the defendant could receive a fair trial. *Id.* On appeal, this Court determined that the trial judge "carefully and meticulously orchestrated the jury selection process to ensure that the [defendant] received a fair trial" and there was "not the slightest hint of an abuse of his judicial discretion" in denying a change of venue. *Id.* at 746. In our view, there was much more potential for a biased jury in *Hoover* than in the present case, where the defendants could have been perceived as having something in common with an alleged murderer because they may have been members of a group with a similar belief system. "[I]n order to obtain relief on a claim that the trial court improperly denied a motion for a change of venue, a 'defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him.'" *Sexton*, 368 S.W.3d at 387 (quoting *Rogers*, 188 S.W.3d at 621). Defendant Cromwell has failed to show prejudice or bias or point to any actual place in the record where he was referred to as a "sovereign citizen." Likewise, the record before us does not contain "the

slightest hint of an abuse of discretion" by the trial court in denying the motion to change venue. Defendant Cromwell is not entitled to relief on this issue.

*Severance*

Defendants Cooper, Lyons, Cromwell, and Usinger challenge the trial court's denial of their motion to sever their case from Defendant Hauser. The four defendants filed this motion during trial after the opening statement of Defendant Hauser, during which counsel claimed that Defendant Hauser was "tricked" into filing the liens. In the motion to sever, the defendants argued that Defendant Hauser implied that the men were part of an anti-government group and that severance was necessary in order to avoid prejudice. The trial court denied the motion from the bench, commenting that the court would "go over with the jury again that there are five different defendants, they're separate, and that they may hear testimony about the other, but they have to consider each defendant separately."

As the jury was brought into the courtroom that day, the trial court reminded them:

[T]here are five defendants on trial, each one is separate, and you're going to have to decide each case separately on whether or not they are guilty or not guilty. Some of the testimony you may hear will refer only to one defendant. If it refers to two, [ ] you have to distinguish these defendants. Can everybody do that?

Each of the five defendants raised this issue in a motion for new trial. The trial court determined that its prior ruling was correct, that severance was not appropriate because the motion "was not due to any previously unknown information," "there was no clear prejudice," and the trial court provided a limiting instruction at trial.

Joint trials of defendants who are indicted together are essential to the promotion of judicial efficiency and "'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). Under Tennessee Rule of Criminal Procedure 8(c), an indictment may charge multiple defendants:

(1) if each of the defendants is charged with accountability for each offense included;

(2) if each of the defendants is charged with conspiracy, and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy; or

(3) even if conspiracy is not charged and all of the defendants are not charged in each count, if the several offenses charged:

(A) were part of a common scheme or plan; or

(B) were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

The rule of joinder promotes judicial economy and efficiency by encouraging a single trial for offenses arising out of a single criminal episode. Tenn. R. Crim. P. 8, Advisory Comm'n Cmts.

However, a defendant can seek a severance from his codefendants under Tennessee Rule of Criminal Procedure 14. A trial court is required to grant the severance if it is found to be "appropriate to promote a fair determination of guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2).[6] In *State v. Harbison*, 539 S.W.3d 149, 159 (Tenn. 2018), our supreme court noted:

[t]here is no bright-line rule as to when a trial court should grant a defendant's request for severance. Courts consider the following factors, none of which are dispositive, when deciding whether to grant a severance: the number of defendants named in the indictment, the number of counts charged in the indictment, the complexity of the indictment, the estimated length of the trial, the disparities in the evidence offered against the defendants, the disparities in the degrees of involvement by the defendants in the charged offenses, possible conflicts between the defendants and their strategies, and prejudice from evidence admitted against a co-defendant(s) which is inadmissible or excluded as to another defendant. *See United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987).

Of course, where multiple defendants are charged in the same indictment, "evidence that is not necessarily applicable to another defendant may be admissible against one or more defendants." *Harbison*, 539 S.W.3d at 159 (citing *State v. Meeks*, 867 S.W.2d 261, 369 (Tenn. Crim. App. 1993)). However, the introduction of such evidence does not mandate severance. This Court has previously held that, "[w]hile 'mutually antagonistic' defenses may mandate a severance in some circumstances, they are not prejudicial per se."

---

[6] A defendant may also "move[ ] for a severance because an out-of-court statement of a codefendant makes reference to the defendant but is not admissible against the defendant . . . ." Tenn. R. Crim. P. 14(c)(1). This portion of the rule is not applicable to our ruling in this case.

*State v. Russell David Farmer*, No. 03C01-9206-CR-00196, 1993 WL 247907, at *4 (Tenn. Crim. App. July 8, 1993) (quoting *Zafiro*, 506 U.S. at 537).

A trial court's denial of a motion for severance is reviewed by this Court under an abuse of discretion standard. *State v. Dotson*, 254 S.W.3d 378, 390 (Tenn. 2008); *State v. Carruthers*, 35 S.W.3d 516, 552 (Tenn. 2000). An abuse of discretion occurs when a trial court "applie[s] an incorrect legal standard or reache[s] a decision against logic or reasoning that cause[s] an injustice." *Dotson*, 254 S.W.3d at 387-88 (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (internal quotation marks omitted)). Thus, we will uphold the trial court's ruling if reasonable minds can disagree with the propriety of the decision, *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000), and will not substitute our judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). We do not interfere with the trial court's exercise of its discretion unless the denial of the motion for severance results in clear prejudice to the defendant. *Carruthers*, 35 S.W.3d at 552. Reversal is required only when the defendant establishes that he was "clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty." *Id.* at 553 (quoting *Hunter v. State*, 440 S.W.2d 1, 6 (Tenn. 1969), *superseded by statute on other grounds*, T.C.A. § 27-111 (Supp. 1970)); *see Ellis v. State*, 403 S.W.2d 293, 294-95 (Tenn. 1966).

We shall discuss the propriety of the trial court's ruling on severance with respect to each Defendant in turn.

### Defendant Cromwell

Defendant Cromwell argues that the trial court abused its discretion in denying the motion to sever because trial counsel for Defendant Hauser violated the trial court's ruling that the parties were prohibited from implicating the defendants' participation in the sovereign citizen movement by repeatedly mentioning the "Knoxville Patriots" and leadership by Defendant Cooper in ways to redress government grievances. As part of his severance argument, Defendant Cromwell suggests that the trial court should have also granted a mistrial. We disagree.

Prior to trial, the trial court determined that the defendants' participation in actions as sovereign citizens was "not relevant" to the proof at trial. Despite this admonition, Defendant Cromwell complains that counsel for Defendant Hauser "surprised" the other defendants by "introducing a defense theory that attempted to prove that the co-defendants had intended to file liens but that [Defendant] Hauser lacked intent due to his involvement in the [s]overeign [c]itizen movement and . . . had been coerced by [Defendant] Cooper."

- 20 -

In our estimation, the severance was not necessary "to promote a fair determination of guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2). The trial court considered the request for severance early in the trial during a jury-out hearing and based its decision on the proper legal standard. The trial court told the jury to mindfully recall from the outset that the defendants were all separate and properly instructed the jury as such. A jury is presumed to follow the instructions given by the trial court, "with commonsense understanding of the instructions in the light of all that has taken place at the trial [that is] likely to prevail over technical hairsplitting." *State v. Knowles*, 470 S.W.3d 416, 426 (Tenn. 2015) (quoting *Boyde v. California*, 494 U.S. 370, 381 (1990)). To overcome this presumption, the defendant must show by clear and convincing evidence that the jury failed to follow the trial court's instructions. *State v. Newsome*, 744 S.W.2d 911, 915 (Tenn. Crim. App. 1987) (citing *State v. Vanzant*, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983)).

Citing to Defendant Hauser's opening statement and the cross-examination of Mr. Birdsell, Defendant Cromwell insists that his case should have been severed. To the contrary, Defendant Cromwell has presented no evidence to overcome this presumption. The opening statement of Defendant Hauser did not mention Defendant Cromwell by name. Moreover, argument of counsel is not evidence. *State v. Wagner*, 382 S.W.3d 289, 299 n.10 (Tenn. 2012). Additionally, Mr. Birdsell did not mention Defendant Cromwell by name during the cross-examination by counsel for Defendant Hauser. We conclude that the trial court did not abuse its discretion in denying Defendant Cromwell's motion for severance based on a finding that severance was not required for a fair determination of guilt or innocence. We also determine that Defendant Cromwell has waived any challenge to the trial court's failure to declare a mistrial. Defendant Cromwell did not ask for a mistrial during trial and raised this issue for the first time on appeal. This issue is waived. *See* Tenn. R. App. P. 36(a).

*Defendant Lyons*

Defendant Lyons, like Defendant Cromwell, points to the opening statement by counsel for Defendant Hauser and the cross-examination of Mr. Birdsell to support his argument that the trial court should have severed the cases for trial. Defendant Lyons argues that his association with the Knoxville Patriots was put in front of the jury and due to the "negative connotations associated with 'sovereign citizens'" his defense was prejudiced. Again, Defendant Lyons has presented no evidence to overcome this presumption. The opening statement of Defendant Hauser did not mention Defendant Lyons by name and, as stated above, argument of counsel is not evidence. *Wagner*, 382 S.W.3d at 299 n.10. Further, Mr. Birdsell did not mention Defendant Lyons by name during the cross-examination by counsel for Defendant Hauser. We conclude that the trial

court did not abuse its discretion in denying Defendant Lyons's motion for severance based on a finding that severance was not required for a fair determination of guilt or innocence.

*Defendant Usinger*

Defendant Usinger argues that the trial court erred by denying the motion to sever and points to the opening statement of Defendant Hauser, claiming that counsel "threw the remaining defendants under the bus" and created prejudice in front of the jury. Defendant Usinger claims the argument was so prejudicial that the trial court should have sua sponte granted a mistrial. For the same reasons we have already discussed, this issue has no merit. Defendant Usinger failed to request a mistrial at trial and failed to show that he was prejudiced by counsel for Defendant Hauser's argument or that the jury failed to follow the trial court's instructions.

*Defendant Cooper*

Lastly, at least with respect to severance, Defendant Cooper argues that the trial court erred in denying a severance after counsel for Defendant Hauser repeatedly referenced how Defendant Cooper "tricked" him into filing liens against the government. Again, statements of counsel are not evidence and the jury was reminded of such. This statement by counsel for Defendant Hauser did not prevent Defendant Cooper from having a fair determination of guilt. Moreover, the cross-examination of Mr. Birdsell by counsel for Defendant Hauser merely revisited testimony that was already elicited during the State's direct examination of the witness. Mr. Birdsell discussed that he met Defendant Cooper at a meeting of the Knoxville Patriots at a restaurant and that Defendant Cooper explained to him how he could sue the government for millions of dollars. Even if this testimony was somehow prejudicial, the alleged prejudice was not caused by the cross-examination of Mr. Birdsell by counsel for Defendant Hauser. Defendant Cooper is not entitled to relief on this issue.

*Labels on Outside of Exhibit Folders*

Defendants Hauser, Cooper, Lyons, and Cromwell argue on appeal that the trial court improperly commented on the evidence by separating multi-page exhibits and placing them in manila folders with labels on the outside of the folders containing "the exhibit number, the counts it relates to, the name of the defendant, the UCC filing number, the alleged debtor's name, the filing date and the amount." The only defendant to object to the procedure at trial was Defendant Hauser, who argued that it "appear[ed] to be a representation of the Court of some sort."

Counsel for Defendant Hauser went on to explain that his client "contest[ed] the value of the documents" and for the trial court to place a value amount on a label on each exhibit would be inappropriate. The trial court overruled the objection, clarifying that there would not be anything on the label "other than what the document says." None of the defendants requested a limiting instruction.

At the outset, we note that Defendants Cooper, Cromwell, and Lyons did not make contemporaneous objections to the trial court's handling of the exhibits. Ordinarily, in the absence of an objection, this issue would be waived. Tenn. R. App. P. 36(a). However, any "error involving a substantial right" that "more probably than not affected the judgment or would result in prejudice to the judicial process" may be considered at "any time." Tenn. R. App. P. 36(b). Of course, "judges in Tennessee are prohibited by our constitution from commenting upon the credibility of witnesses or upon the evidence in the case." *State v. Suttles*, 767 S.W.2d 403, 406 (Tenn. 1989); *see also* Tenn. Const. art. VI, § 9. Therefore, a fundamental right to a fair trial is implicated if a trial judge improperly comments on the evidence in a case. "In all cases the trial judge must be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." *Suttles*, 767 S.W.2d at 407. Despite these constraints, "not every comment on the evidence made by a judge is grounds for a new trial." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 134 (Tenn. 2004).

In this case, it is more than apparent from our review of the record that there was potential for confusion based on the sheer number of counts in the indictment and exhibits that corresponded not only to each count but to each of the five defendants. In our view, the trial court's actions merely tried to organize the 103 exhibits containing approximately 1500 pages of information. In doing so, the trial court did not even remotely make any improper comment on the evidence. Therefore, Defendants are not entitled to relief on this issue.

### *Referring to Witness Titles*

Defendant Usinger argues on appeal that he was denied a fair trial "when many of the witnesses in this case were allowed to be referred to by their professional/political titles." He claims that "counsels" for defendants filed a motion in limine pretrial seeking to prohibit the State from doing so and that the trial court erred in denying the motion. The State insists that Defendant Usinger has waived this issue. We agree with the State.

Defendant Cooper filed a pretrial motion in limine seeking to prohibit references to the titles of various witnesses at trial. The trial court denied the motion. It does not appear that any of the other defendants joined in this motion or filed their own motion, including

- 23 -

Defendant Usinger. Moreover, Defendant Usinger failed to raise this issue in his motion for new trial, amended motion for new trial, or second amended motion for new trial. Additionally, Defendant Usinger fails to support his argument on appeal with citation to authority. Accordingly, he has waived this issue. Tenn. R. App. P. 36(a); Tenn. Ct. Crim. App. R 10(b).

*Sufficiency*

All five Defendants challenge the sufficiency of the evidence with respect to their convictions. While Defendants Cromwell, Cooper, and Lyons challenge their convictions for forgery and fraudulently filing a lien, Defendants Hauser and Usinger appear to challenge only their forgery convictions. The State disagrees with the defendants, insisting that the evidence "overwhelmingly supported the verdicts in all counts."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

*A. Forgery*

Each of the defendants was indicted for multiple counts of forgery, pursuant to Tennessee Code Annotated section 39-14-114(a), which provides that a "person commits

- 24 -

an offense who forges a writing with intent to defraud or harm another." To "forge" in this case means to "[m]ake false entries in books or records." *Id.* §39-14-114(b)(1)(B). Forgery can never be less than an E felony but is punished in the same manner as theft, pursuant to Tennessee Code Annotated section 39-14-105(a), pursuant to value, in pertinent part as follows:

> (2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);
> (3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000);
> (4) A Class C felony if the value of the property or services obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000);
> (5) A Class B felony if the value of the property or services obtained is sixty thousand dollars ($60,000) or more but less than two hundred fifty thousand dollars ($250,000); and
> (6) A Class A felony if the value of the property or services obtained is two hundred fifty thousand dollars ($250,000) or more.

The crime of forgery "is complete by the forgery with the fraudulent intent, whether any third person be actually injured or not." *State v. Odom*, 64 S.W.3d 370, 372 (Tenn. Crim. App. 2001) (citing *State v. James*, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984)). "It is sufficient the instrument forged, with the fraudulent intent, might have been prejudicial to the rights of another." *State v. James*, 688 S.W.2d 463, 466-67 (Tenn. Crim. App. 1984) (citing *Ratliff v. State*, 133 S.W.2d 470, 471 (Tenn. 1939)).

*Defendant Cromwell*

Defendant Cromwell insists that the proof at trial indicated "paperwork had been filed alleging various persons were indebted to [Defendant] Cromwell, but not making clear what the debt was and assigning any interest to the United States Treasury." He also complains that his identity was not proven.

The proof at trial indicated that Defendant Cromwell's name appeared on multiple UCC financing statements filed electronically with the Secretary of State's office, each one alleging that Defendant Cromwell was owed millions of dollars in collateral against the individuals specified in the documents. The UCC1 documents contain Defendant Cromwell's name, address, phone number and email as the person filing the documents. Mr. Birdsell testified that he and Defendants Cooper and Cromwell all went to meetings of

the Knoxville Patriots and that Defendant Cooper provided him with all of the information necessary to file liens against government officials. It is for the jury to determine whether identity was proven. *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015). In our view, the evidence was sufficient to support the convictions for forgery with respect to Defendant Cromwell.

*Defendant Lyons*

Defendant Lyons argues that his actions did not amount to making a "false entr[y] in books or records" as required by the statute, thus he could not have been convicted of forgery. Defendant Lyons acknowledges that the proof "supports the contention that [he] filed liens against numerous individuals without any reasonable or legal basis to do so" but that it did not establish that he made a "false entry" on "books or records" and to find so would expand the meaning of the forgery statute. To the contrary, the testimony of Mr. Burton indicates that the liens are "records that are filed in [the Secretary of State's] office." The evidence was sufficient to establish that Defendant Lyons was guilty of forgery within the meaning of the forgery statute. Defendant Lyons is not entitled to relief on this issue.

Defendant Lyons also tries to argue that he cannot be convicted of both forgery under Tennessee Code Annotated section 39-14-114 and filing a false lien. In his view, section 39-14-114 is inapplicable to his case where the General Assembly enacted a specific statute, such as Tennessee Code Annotated section 39-17-117, to punish the conduct for which he is accused.

The proof at trial showed that Defendant Lyons filed multiple UCC Financing Statements electronically with the Secretary of State's office, each alleging that the defendants were owed millions of dollars. Each UCC Financing Statement named a specified individual debtor. Mr. Burton testified that the documents were "filed" in the office in Nashville to "put[] the world on notice that [the submitter of the document] h[ad] an interest in whatever type of collateral" of the debtor was listed. Nearly every victim who testified at trial stated that they did not know any of the defendants personally and each victim who knew a defendant claimed that they did not owe a defendant any money or have any contractual or business relationship with a defendant that would give the defendant the authority to file a lien against them. Each financing statement claimed a possessory interest in excess of $4 million, thus a jury could reasonably determine that the value of every forgery was at least $250,000. As to Defendant Lyon's argument that he did not make a "false entry," the jury heard the proof and determined that he filed a lien that falsely purported possessory interest in the property of the victims named in the indictment. Lastly, Defendant Lyons insists that because several victims did not testify and because several of the liens were "never accepted" by the State, he could not be found guilty. To the contrary, a conviction for forgery does not require the State to prove that a

victim was actually harmed. The statute requires a person to forge a writing with intent to defraud or harm another. There was ample testimony from multiple victims to establish Defendant Lyons's intent. To the extent Defendant Lyons claims that he could not be convicted because liens were never accepted, Mr. Burton explained that some of the liens were voided after they had already been filed because they were contested and "the notice that [the State] sent to the secured party [of the lien being contested] was returned undeliverable." This is not the same as the lien never being filed. The evidence was sufficient to support Defendant Lyons' convictions for forgery.

*Defendant Usinger*

Defendant Usinger argues that the trial court erred in denying the motion for judgment of acquittal or, in the alternative, motion for new trial, with respect to his convictions for forgery because there was insufficient evidence. Specifically, he argues that the "State failed to demonstrate . . . that the acts of actually filing the fraudulent liens . . . were acts he perpetrated." It appears Defendant Usinger challenges whether the State proved his identity at trial. Additionally, he argues that he did not make a "false entry" as required by the forgery statute and that "none of the acts conform with any of the listed definitions of the term 'forge'" because the liens "were not valid." Defendant Usinger also argues that the State failed to prove that each lien had a value of at least $250,000 because the purported value of each financing statement listed under the "maximum principle indebtedness" section of each lien is $0.

Again, we determine that the evidence was sufficient. The jury heard the proof and determined Defendant Usinger's identity was proven and that he made "false" entries by filing UCC financing statements with the Secretary of State for amounts exceeding $250,000. Mr. Burton's testimony indicated that the "maximum principle indebtedness" section related to the "indebtedness tax" that is used by the department of revenue and that the amount listed on the lien was the amount listed in the collateral description. Defendant Usinger is not entitled to relief on this issue.

*Defendant Cooper*

Defendant Cooper argues that there was no proof that he actually filed the liens that were the subject of the indictments and that there was no proof that the entries were false. The only authority Defendant Cooper submits to support his position on appeal is the actual language of the statute designating forgery a crime.

To the contrary, at trial, Mr. Birdsell testified that he, Defendant Cooper, and Defendant Cromwell all attended meetings of the Knoxville Patriots and that Defendant Cooper provided him with the documents, names, and addresses that he needed to file liens

against government officials.  The financing statements listed the name, address, phone number, and email address of the person filing the statement.  The victims testified that they had no contractual or legal obligation to pay the defendants any amount of money.  In our view, the evidence was sufficient to support the convictions for forgery with respect to Defendant Cooper.

*Defendant Hauser*

Lastly, Defendant Hauser argues that he did not commit forgery when he filed the financing statements because in merely filing financing statements, he did not file "forged writings" even if the documents contained false information.  Furthermore, Defendant Hauser contends that the State failed to prove that the financing statements had a value of $250,000 or more because the collateral description is not the equivalent of value and financing statements do not have an "inherent value."  Defendant Hauser cites the common law definition of forgery, claiming that forgery "does not embrace false contents of a genuinely executed document."  Tennessee Code Annotated section 39-17-117 (b)(1)(A) actually incorporates the common law definition of forgery into the statute.

The proof at trial indicates that Mr. Birdsell personally saw Defendant Usinger filing liens on the computer through the Secretary of State website.  The victims who testified at trial testified that they did not owe Defendant Hauser any money and had not entered into any type of arrangement that would allow him to obtain a lien against them.  All of the financing statements at issue proclaimed apparent values of more than $4 million, as testified to my Mr. Burton.  In our view, the evidence is sufficient to support Defendant Hauser's convictions for forgery.

*B.  Fraudulently Filing Liens*

Next, except for Defendants Hauser and Usinger, each of the defendants claims that the evidence was insufficient to support the convictions for fraudulently filing a lien.  To establish the elements of fraudulently filing a lien, Tennessee Code Annotated section 39-17-117(a)(1) requires the State to prove that the defendants knowingly prepared, signed, or filed a lien with the intent to encumber the real or personal property of an individual when they had no reasonable basis or legal cause to do so.

Viewed in the light most favorable to the State, the proof at trial established that each of the defendants filed liens against multiple victims.  Each of the liens claimed a possessory interest in millions of dollars of each victim's property.  Of the victims who testified at trial, there were very few who even knew the defendants personally.  Even the victims who knew the defendants could not explain any reason that the defendants would have or could have filed liens against them.  In our view, the evidence is more than sufficient to establish that the defendants "knowingly prepare[d], sign[ed], or file[d] any

lien or other document with the intent to encumber any real or personal property when such person has no reasonable basis or any legal cause to place such lien or encumbrance on such real or personal property." Defendants Cooper and Cromwell argue that there was no proof of valuation of the liens and that the filings were "worthless" so they could not be convicted of the offense of fraudulently filing a lien. Defendants' point matters not for this Class E felony. Valuation is not an element of the offense. The defendants are not entitled to relief on this issue.

## *Double Jeopardy*

Defendants Cooper, Lyons, and Cromwell argue on appeal that their convictions for forgery and fraudulently filing a lien violate double jeopardy principles. The State disagrees, insisting that the defendants have waived consideration of this issue for failing to support it with legal argument. In the alternative, the State argues that the defendants are not entitled to plain error review of this issue.

It is no secret that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this Court." Tenn. Ct. Crim. App. R. 10(b); *see also* Tenn. R. App. P. 27(a)(7) (stating that a brief must contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief"). While the briefs of Defendants Cooper, Lyons, and Cromwell cite general case law regarding double jeopardy principles, there is a notable absence of argument with respect to why their dual convictions for forgery and fraudulently filing a lien violate double jeopardy, other than a blanket allegation that they are being punished twice for the "same behavior" or "same conduct." In our view, Defendants have waived this issue.

Additionally, Defendants have not asked for and are not entitled to plain error review because they cannot establish all five factors necessary for review. Issues that have been waived may be reviewed in the discretion of the appellate court for plain error when all five of these factors are established: (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the defendant did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016). Defendants' complaint of double jeopardy infraction is totally without merit.

## *Sentencing*

- 29 -

Each defendant complains about his sentence. The State argues that the trial court did not abuse its discretion in sentencing the defendants to within range sentences for their convictions.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts. This Court also presumes reasonableness for consecutive sentencing determinations "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds" for discretionary consecutive sentencing. *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013).

*Defendant Cromwell*

The trial court started by sentencing Defendant Cromwell. The trial court noted several inaccuracies on the presentence report with regard to Defendant Cromwell's prior convictions. Defendant Cromwell was on bond at the time of his arrest for vehicular homicide. Agent Mark Irwin of the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force testified that he was stationed in Knoxville in 2016. He began his investigation of the defendants in May of 2016 and gathered information that eventually led to the indictments in this case. According to Agent Irwin, in addition to the named individuals, Defendant Cromwell also filed liens against the Department of Treasury, IRS, the Social Security Administration in Birmingham, the Department of Treasury in Atlanta, Oak Ridge Police Department, Anderson County General Sessions Court, Anderson County District Attorney's Office, Anderson County Criminal Court, and Anderson County Circuit Court.

Defendant Cromwell refused to take an oath prior to his allocution. He claimed that he filed liens "against the corrupt judges, the corrupt D[A]s, and the chief of police, because either one of them or all of them conspired to steal [his] truck" after his accident. Defendant Cromwell explained that he worked his entire life, went to church, and was a "law abiding man." Defendant Cromwell indicated that his health had deteriorated while he was in prison but that his conduct had been exemplary, with "no write-ups."

Dr. Pamela Auble also testified for Defendant Cromwell as an expert in neuropsychology. She reviewed Defendant Cromwell's medical history and reported that he had "some pretty significant health problems" including diabetes, hypertension, high cholesterol, and obesity. As a result of those conditions, Defendant Cromwell suffered from metabolic syndrome. Defendant Cromwell also suffered from a series of transient ischemic attacks that were minimized by the use of blood thinner. She described Defendant as "frustrated and uncooperative." She reported that Defendant Cromwell was in a bad car accident when he was young and as a result of that accident suffered from severe head injuries. In fact, she determined that Defendant Cromwell had some degree of impairment as a result of the injuries. Defendant Cromwell had a normal IQ but had difficulty with abstract reasoning and executive function. Dr. Auble attempted to explain how Defendant Cromwell perceived the government. She understood that Defendant Cromwell "says that income taxes are like excise taxes on a corporation for the privilege of doing business" and that they are voluntary. According to Dr. Auble, Defendant Cromwell genuinely believed that his thoughts on government were legitimate

With respect to Defendant Cromwell, the trial court determined that enhancement factor one applied because Defendant Cromwell had a previous history of criminal convictions in addition to those necessary to establish the appropriate range. In addition, the trial court determined that enhancement factor thirteen applied because Defendant Cromwell was on bail at the time the felony was committed. The trial court noted that Defendant Cromwell "stands alone in this" because there was no testimony at trial that he was involved with Defendant Cooper. As a result, the trial court declined to determine that Defendant Cromwell was a leader in the commission of the offense. In mitigation, the trial court determined that Defendant Cromwell's criminal conduct did not cause or threaten serious bodily injury. The trial court declined to apply other proposed mitigating factors but noted that Defendant Cromwell behaved "appropriately in court." Ultimately, the trial court sentenced Defendant Cromwell to two years for each conviction for filing a fraudulent lien and to twenty-five years for each forgery conviction. The trial court denied alternative sentencing and commented that probation was not appropriate because it would depreciate the seriousness of the offense and was necessary to provide an effective deterrent. The trial court found that Defendant Cromwell was "an offender whose record of criminal activity is extensive." The trial court denied consecutive sentencing, sentencing Defendant Cromwell to an effective sentence of twenty-five years.

On appeal, Defendant Cromwell does not argue that the trial court improperly applied enhancement factors. Instead, he argues that his sentence is "in contravention" with the principles of the Sentencing Act. To the contrary, we determine that the trial court did not abuse its discretion in sentencing Defendant Cromwell to a within-range sentence for his multiple convictions. Defendant Cromwell is not entitled to relief on this issue.

*Defendant Lyons*

At the sentencing hearing, the trial court learned that Defendant Lyons had no prior criminal history. According to Agent Irwin, Defendant Lyons was convicted on sixty separate counts and also took out liens against entities and individuals that were not presented to the grand jury. These included liens against: Morristown, Tennessee; Watson, Roach, Batson, Rowell, and Lauderback; Tennessee Officer of Safety and Homeland Security in Nashville, Tennessee; Knox County Government; Roane County Government; and Loudon County Government. Defendant Lyons declined to participate in the presentence report and the sentencing hearing.

Wendy Hamil testified for Defendant Lyons. She reported that they had "been living as a married couple for eight years" prior to the time of his arrest. She and Defendant Lyons "lost everything" as a result of the convictions. She described Defendant Lyons as "very loving" and "gullible." Ms. Hamil reported that if she saw Defendant Lyons she would "choke him" because she was "very upset" with him. Ms. Hamil talked to Defendant Lyons prior to the sentencing hearing and explained that he expressed remorse for his actions.

The trial court determined that Defendant Lyons had a previous history of criminal convictions in addition to those necessary to establish the appropriate range. In mitigation, Defendant Lyons's conduct neither caused nor threatened serious bodily injury. The trial court sentenced Defendant Lyons to twenty-two years on each forgery conviction and two years on each fraudulent lien conviction, for a total of sixty convictions (thirty for each crime). As to alternative sentencing, the trial court found that a sentence of confinement was needed for deterrence. For consecutive sentencing purposes, the trial court determined that Defendant Lyons was an offender whose record of criminal activity was extensive. The trial court, however, declined to order consecutive sentencing, ordering Defendant Lyons to serve a total effective sentence of twenty-two years.

On appeal, Defendant Lyons argues that the trial court did not provide "an explanation as to how it arrived at the sentence . . . nor how it applied the mitigating and enhancing factors." The record does not support his argument. The trial court determined that Defendant Lyons had a history of criminal behavior but also determined that some mitigation was necessary based on the fact that there was no actual threatened serious bodily injury. The trial court did not abuse its discretion in sentencing Defendant Lyons. Defendant Lyons is not entitled to relief on this issue.

*Defendant Cooper*

With regard to Defendant Cooper, the trial court noted that there were two separate cases, 2017-B-1143 (Counts 11 through 20) and 2017-A-79 (twenty total counts). Defendant Cooper also filed liens against entities and individuals who resided outside the state of Tennessee. The individuals included Ross T. Allegro, II, of Austin, Texas; Mark B. Taylor of San Marcos, Texas; William Donald Montego of Driftwood, Texas; Howard Earl Williams of San Marcos, Texas; Steve Doug McMillan of Bentonville, Arkansas; Mary Ann Daigle of Galveston, Texas; Jim Schweitzer of Galveston, Texas; Codilis and Stawlarski of Houston, Texas; Rachel Donnelly of Houston, Texas; Walmart of Jacksboro, Tennessee; Jacksboro Tennessee Police Department; Watson, Roach, Batson and Rowell, Lauderback of Knoxville, Tennessee; Department of Treasure in Atlanta, Georgia and Austin, Texas; Anderson County General Sessions Court; Anderson County Sheriff's Department; Anderson County District Attorney's Office; and the Tennessee Office of Safety and Homeland Security in Nashville, Tennessee. There was also an injunction against Defendant Cooper in the State of Colorado, prohibiting him from teaching classes on "how not to pay your taxes."

Defendant Cooper declined to participate in the sentencing hearing. The trial court noted that Defendant Cooper was convicted of a total of 30 counts, 10 from case number 2017-B-1143 and 20 from case number 2017-A-79. The trial court determined that Defendant Cooper had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, including attempting to evade income tax, violation of an injunction, and other charges that were not part of the indictment. The trial court also determined that Defendant Cooper was the leader in the commission of an offense involving two or more actors. The trial court noted that Defendant Cooper profited from several of the other defendants, in an amount of at least $19,500. In mitigation, the trial court noted that Defendant Cooper's conduct neither threatened nor caused serious bodily injury. The trial court sentenced Defendant Cooper to two years for each conviction for filing a fraudulent lien and twenty-five years for each forgery conviction. The trial court denied alternative sentencing. With regard to consecutive sentencing, the trial court determined that Defendant was an offender with an extensive record of criminal activity. The trial court ordered the twenty-five-year sentences in Counts 11 through 20 of case number 2017-B-1143 to run consecutively with the twenty-five-year sentences in case number 2017-A-79, for a total effective sentence of fifty years.

On appeal, Defendant Cooper points out that his sentence "ensures he will die in prison without the opportunity to reenter society." He does not challenge the trial court's findings. Defendant Cooper's argument does not invalidate the sentence imposed by the trial court. The total effective length of a defendant's sentences will not be found to be excessive simply because it would extend beyond the expected lifetime of the defendant. *State v. Robinson*, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995). The trial court did not abuse its discretion. Defendant Cooper is not entitled to relief on this issue.

*Defendant Usinger*

With respect to Defendant Usinger, Agent Irwin explained at the sentencing hearing that he filed liens against sixteen different offices of the IRS, including those in Kansas City, Missouri; Philadelphia, Pennsylvania; Memphis, Tennessee; Birmingham, Alabama; and Knoxville, Tennessee, in addition to liens against the Tennessee Department of Homeland Safety and Security; Greene County Sheriff's Office; Knox County Government; Roane County Government; and Loudon County Government.

The trial court noted that Defendant Usinger was convicted of forty-four counts. The trial court found that one enhancing factor applied, that Defendant Usinger had a prior criminal history. The trial court found in mitigation that Defendant Usinger's conduct neither caused nor threatened serious bodily injury. The trial court sentenced Defendant Usinger to two years for each of the fraudulent lien convictions and twenty-one years for each conviction for forgery. The trial court denied alternative sentencing on the basis of deterrence. Despite a finding that Defendant Usinger had an extensive record, the trial court declined to order consecutive sentencing, ordering Defendant Usinger's sentences to run concurrently, for a total effective sentence of twenty-one years.

On appeal, Defendant Usinger argues that because the victims "suffered no physical or financial harm" he should have been sentenced at the bottom of the range. To the contrary, at least two victims testified that they were harmed by the liens. Ms. Bannach testified that her ability to purchase a home was affected by the liens placed against her by the defendants. Additionally, Ms. Hauser testified that she tried to get a personal loan and was unable to get the loan because of the lien filed against her. Moreover, whether Defendant's actions harmed anyone has no bearing on the trial court's determination as to the length of his sentence. The trial court did not abuse its discretion in sentencing Defendant Usinger to a within-range sentence. Defendant Usinger is not entitled to relief on this issue.

*Defendant Hauser*

Defendant Hauser had a separate sentencing hearing on the same day. He was convicted of twenty-one counts of filing a fraudulent lien and twenty-one counts of forgery. Agent Irwin testified that Defendant Hauser also filed liens against entities that were not included in the indictments. These liens were filed against Knox County Government, Loudon County Government, Tennessee Department of Safety and Homeland Security, Circuit Court of Cocke County, and Tennessee Department of Human Services Child Support.

Defendant Hauser's mother, Mary Hauser Larson, testified that Defendant Hauser's behavior was not indicative of the way he was raised. She apologized for his actions. She acknowledged that Defendant Hauser was in the Army. Ms. Larson was not under the impression that anyone was hurt by Defendant Hauser's actions.

Rebecca Hauser testified that she was married to Defendant Hauser. She explained that Defendant Hauser changed after he met Defendant Cooper and paid him $6500. Defendant Hauser informed her of the actions he was taking when he filed the liens but she did not understand it. She claimed that if he "knew it was illegal, he wouldn't have done it."

Defendant Hauser testified that he was in the Army. He was discharged in 1990. He recalled that he injured his knee in the military in an auto accident and, after leaving the military, fell about forty feet off of a cliff and received significant injuries. Since that time, he reported being disabled. Defendant Hauser also reported dealing with post-traumatic stress disorder as a result of his military service. Defendant Hauser claimed that he planned to start a nonprofit called Veterans Adventures. Defendant Hauser explained that he got divorced from his first wife after his fall. At the time, they had two small children. Defendant Hauser eventually became frustrated with how "child support was going." When he met Defendant Cooper, he became interested in the process of filing liens. He paid Defendant Cooper $6500 for help. He explained that he thought what he was doing was legal. He admitted that he did not know all of the people against whom he was securing liens and that he provided his credit card information for filing the UCC documents.

In sentencing Defendant Hauser, the trial court noted that he had a previous history of criminal convictions in addition to those necessary to establish the range, based on his arrest for violation of an order of protection and other events that were not charged in the indictment. The trial court agreed that Defendant Hauser's conduct neither caused nor threatened serious bodily injury. The trial court declined to apply several enhancement factors and at least one mitigating factor. The trial court sentenced Defendant Hauser to two years for each of the twenty-one fraudulent lien convictions and twenty years for each of the twenty-one forgery convictions. As to consecutive sentencing, the trial court determined that Defendant Hauser had an extensive criminal history. The trial court declined consecutive sentencing, ordering the sentences to be served concurrently, for a total effective sentence of twenty years. The trial court denied alternative sentencing for Defendant Hauser on the basis that it would depreciate the seriousness of the offense and would deter others.

Defendant Hauser argues that the trial court erred in applying enhancement and mitigating factors. Enhancement and mitigating factors are advisory only. *See* T.C.A. §

40-35-114, -210(c).  Even if the trial court improperly applied an enhancement or mitigating factor, Defendant Hauser's sentence will be upheld as long as it is consistent with the purposes and principles of the Sentencing Act.  The trial court did not abuse its discretion in sentencing Defendant Hauser to a within-range sentence after following the procedure set forth in the Sentencing Act.  Defendant Hauser is not entitled to relief on this issue.

*Cumulative Error*

The cumulative error doctrine applies to circumstances in which there have been "multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010).  However, circumstances which would warrant reversal of a conviction under the cumulative error doctrine "remain rare." *Id.*  The record before us reveals a multi-defendant, multi-victim, multi-count, multi-charge, multi-day jury trial which was remarkably tedious.  To complicate matters, it was filled with many mostly meritless claims, which were equally remarkably fairly and fully controlled by the trial court and counsel.  The result, in our view, was a clean and error-free proceeding, from start to finish, rendering due process to each of the defendants.  No error at all removes the need for our review for cumulative error.

_____
TIMOTHY L. EASTER, JUDGE